**DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| SHERRY SMALLS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 9:21-cv-02803-RMG-MGB |
| HAMPTON COUNTY COUNCIL ON AGING, | ) |
| | ) **COMPLAINT** |
| Defendants. | ) (Jury Trial Requested) |

The Plaintiff above named, complaining of the Defendant herein, would respectfully show unto the Court:

## INTRODUCTION

This is an employment discrimination case in which the Defendant refused to accommodate the Plaintiff's disability with relation to COVID-19 and then fired her under false pretenses and replaced her with someone who was outside of her protected class with regard to race and disability.

## JURISDICTION AND PARTIES

1. Defendant Hampton County Council on Aging is a community services agency within the Hampton County government located in Hampton County, South Carolina.

2. Plaintiff Sherry Smalls is a citizen and resident of Hampton County, South Carolina.

3. All parties and subject matter herein are within the jurisdiction of this Honorable

Court.

**BACKGROUND FACTS**

4. Hampton County Council on Aging (the Agency) is responsible for training managers, and supervisors, and Human Resources employees who make personnel decisions to act in a manner that complies with the Agency's non-discrimination policy as well as state and federal antidiscrimination law.

5. The Agency operates a facility at 108 Pine Street, Hampton, SC.

6. Since April of 2015, the Agency employed Plaintiff Sherry Smalls as a Call Coordinator.

7. Ms. Smalls is African American female and has underlying health conditions.

8. Ms. Smalls' health conditions include lupus, fibromyalgia, asthma, high blood pressure, and post-traumatic stress disorder (PTSD).

9. Ms. Smalls' medical conditions substantially limit her abilities to lift and pull heavy objects, and also require her to manage her stress levels to prevent exacerbating her conditions.

10. The Agency was aware of Ms. Smalls' medical conditions because she discussed it with Agency personnel during the hiring process.

11. Despite her medical conditions, Ms. Smalls was able to perform the duties of her position to the reasonable expectations of the Agency.

12. Ms. Smalls was a Qualified Individual with a Disability (QID) while employed by the Agency.

13. The Agency was supervised by Director Linda Kearse.

14. Ms. Kearse was personally aware of Ms. Smalls' medical conditions from

conversations with Ms. Smalls.

15. In mid-March, 2020, as the COVID-19 pandemic emerged, Director Kearse told all Agency employees that they should not report to work if they did not feel safe.

16. Ms. Kearse also told employees that the office would be following CDC guidelines including using masks and hand sanitizer.

17. In reality, the Agency was lax in its protective measures regarding COVID-19 in the following months.

18. In mid-April, few employees in the office were using masks or hand sanitizer.

19. In mid-April, Director Kearse was approached by Ms. Smalls about Ms. Smalls' fears of potential COVID infection at the office.

20. Ms. Kearse knew or should have known, that this was a request for ADA accommodation for a QID.

21. Ms. Kearse told Ms. Smalls that it was fine for her to not come in if Ms. Smalls felt it was unsafe.

22. Ms. Kearse also told Ms. Smalls it was fine to stay home from work "until the numbers go down," referring to COVID infection numbers.

23. Ms. Kearse did not set a deadline or limit on Ms. Smalls staying home from work for COVID safety during this conversation or at any other time.

24. Ms. Kearse also told Ms. Smalls that she would have to use paid time off or be on leave without pay status.

25. Ms. Smalls asked if she could work from home so that she could perform her call coordinator duties without being endangered by potential COVID infection.

26. Ms. Kearse knew or should have known that this was a request for ADA

accommodation from a QID.

27. Ms. Kearse refused to allow Ms. Smalls to work from home, saying "that would not work for her."

28. Ms. Kearse denied the ADA accommodation request without engaging in the interactive process or evaluating whether the request would be an undue hardship on the operation of Defendant's business.

29. Ms. Kearse denied Ms. Smalls' work from home request despite it being feasible for Ms. Smalls to work from home managing calls.

30. It would not have been an undue burden on the operation of the Agency's business for Ms. Smalls to work from home.

31. Ms. Kearse instead offered Ms. Smalls an "accommodation" in the form of Ms. Smalls working in her own office with the door closed and not having to interact with other employees.

32. This was not an accommodation because it did not involve a change of working conditions; this was in fact the same conditions that Ms. Smalls was already working under and concerned about.

33. This was also not an effectual response to Ms. Smalls' ADA accommodation request because employees would still come into Ms. Smalls' office without wearing a mask.

34. Ms. Kearse, therefore, did not offer an ADA accommodation to Ms. Smalls, and instead offered the status quo that endangered Ms. Smalls' health.

35. In mid-May, Ms. Kearse spoke with Ms. Smalls on the phone and told Ms. Smalls that it was fine for Ms. Smalls to continue staying home from work considering the

high number of COVID infections in the area.

36. One month later, Ms. Kearse began telling Agency employees that Ms. Smalls had quit her job.

37. This was untrue: Ms. Smalls had never quit her job nor had she told Ms. Kearse of any intent to quit her job.

38. Ms. Kearse also told employees that she would be looking for someone to hire for Ms. Smalls position.

39. On or about July 15, 2020, Ms. Kearse received a call from Ms. Smalls asking why Ms. Kearse was looking for someone to replace her in her call coordinator position.

40. Ms. Kearse told Ms. Smalls that she had been unhappy there and left the job.

41. Ms. Smalls objected that this was not true, and that they had talked more than once about her staying home for health reasons.

42. Ms. Kearse told Ms. Smalls that she was terminated and would be replaced.

43. That same week, Ms. Kearse filled Ms. Smalls' position with a white individual who was not a Qualified Individual with a Disability.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

44. On September 3, 2020, the Plaintiff filed her EEOC charge.

45. On June 15, 2021, the Plaintiff received her Notice of Suit Rights letter from the EEOC.

46. The Plaintiff has exhausted administrative remedies prior to filing this action and filed suit within the statute of limitations.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1981**

47. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

48. 42 U.S.C.§1981 guarantees that African American citizens be treated equally in contractual matters as White citizens.

49. An employment relationship is by nature contractual.

50. Defendant employed the Plaintiff.

51. Defendant had a contractual relationship with the Plaintiff.

52. The Plaintiff is African American.

53. Defendant discharged the Plaintiff from employment.

54. Defendant replaced the Plaintiff with an individual that is outside of the Plaintiff's protected class.

55. At the time of discharge, Plaintiff was performing her duties at a level that met the Defendant's reasonable expectations.

56. The Defendant's discharge of the Plaintiff occurred under circumstances that raise a reasonable inference of unlawful discrimination.

57. As a result of Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C. § 2000e et seq.)**

58. The Plaintiff re-alleges all the foregoing paragraphs as if restated herein verbatim.

59. The Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964.

60. Defendant discharged the Plaintiff from employment.

61. Defendant replaced the Plaintiff with an individual that is outside of the Plaintiff's protected class.

62. At the time of discharge, Plaintiff was performing her duties at a level that met the Defendant's reasonable expectations.

63. The Defendant's discharge of the Plaintiff occurred under circumstances that raise a reasonable inference of unlawful discrimination.

64. As a result of Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

65. The Plaintiff seeks actual and punitive damages, costs and attorney's fees in such amounts as are just and proper as well as other relief available from this Court.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Failure to Accommodate**
**(42 U.S.C. §§ 12101 et seq)**

66. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

67. Defendant is an employer subject to the requirements and prohibitions set forth in the Americans with Disabilities Act and the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 et seq (collectively, the ADA).

68. The Plaintiff is a Qualified Individual with a Disability (QID) within the meaning of the ADA.

69. Defendant knew of the Plaintiff's disability and that she was a QID.

70. The accommodations requested by the Plaintiff were feasible and did not constitute an undue hardship on the operation of Defendant's business.

71. Defendant failed to engage in the good faith interactive process with the Plaintiff to see if an accommodation could be reached that was feasible and not an undue hardship on Defendant.

72. Had Defendant engaged in the interactive process in good faith, it would have been able to identify an accommodation that was not an undue hardship on the operation of the company.

73. Defendant wrongfully denied Plaintiff's requests for a reasonable accommodation.

74. Defendant's refusal to accommodate the Plaintiff was violation of the ADA.

75. Defendant discharged the Plaintiff because of her disability.

76. Defendant's discharge of the Plaintiff was discrimination against a QID on the basis of a disability.

77. Defendant knew, or should have known, of its obligations under the ADA.

78. Defendant knew, or should have known, that its actions violated the ADA and still knowingly committed the violations.

79. As a result of Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

80. The Plaintiff seeks actual and punitive damages, costs and attorney's fees in such amounts as are just and proper as well as other relief available from this Court.

## FOR A FOURTH CAUSE OF ACTION
## VIOLATION OF THE REHABILITATION ACT OF 1973
### Failure to Accommodate
### (42 U.S.C. § 2000e et seq.)

81. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

82. The Plaintiff was an individual with a disability within the meaning of the Rehabilitation Act of 1973.

83. The Plaintiff was a qualified individual with a disability while employed by the Defendant.

84. The Defendant had notice of the Plaintiff's disability.

85. The Plaintiff could perform the essential functions of the position of employment with reasonable accommodation from the Defendant.

86. The Defendant refused to make such accommodation.

87. The Defendant took adverse action against the Plaintiff because of her disability.

88. As a result of Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

89. The Plaintiff seeks actual and punitive damages, costs and attorney's fees in such amounts as are just and proper as well as other relief available from this Court.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants for all injuries and damages, compensatory damages, punitive damages, fees and costs and equitable remedies set forth in this complaint and/or allowed, provided for or permitted by the common law or statutory law in such an amount as shall be determined by the finder of

fact under the evidence presented at trial, and for further relief as the Court may deem just and proper.

Respectfully submitted,

s/David A. Nauheim
David A. Nauheim
Fed ID No. 12551
*david@nauheimlaw.com*
NAUHEIM LAW OFFICE, LLC
P.O. Box 31458
Charleston, SC 29417
Tel: 843 534-5084
Fax: 843 350-3572

s/Joshua Mangan
Joshua T. Mangan
Fed ID No. 13351
*josh@nauheimlaw.com*
Of Counsel
NAUHEIM LAW OFFICE, LLC
P.O. Box 31458
Charleston, SC 29417
Tel: 864 985-9137
Fax: 843 350-3572

ATTORNEYS FOR THE PLAINTIFF

August 30, 2021